Please be seated. Would the clerk read the next case, please? 3-12-0036 Mary Kibbons v. John Ridge v. City of Kankakee Mr. Ridge, good morning. May it please the court, Mr. Bowles. I represent Mr. Kibbons and the issue... Oh, we had three issues in this case and then the court wanted us to get a supplemental brief on the subject matter jurisdiction. But basically, this is an issue where the city used Mr. Kibbons' accrued benefits to pay his workman's compensation. And what it comes down to, the first issue we presented was whether the employer can require an employee to pay for his own workman's compensation benefits. This is what happened in this case. And the important thing that came out in the trial here is this is the first time, this is the only time that this ever happened. They made an exception. And the argument that we've heard on this is that, well, you know, if Mr. Kibbons had some accrued benefits that he was still owed, he should have included that as part of, I guess, his workman's compensation claim. And when he got his permanent injury settlement, it should have been included in that. Well, Your Honor, I don't want to belabor that point, but there is absolutely nothing in the workman's comp act that provides for that. Basically, it covers medical costs, maybe 65% of your wages, and then you get a permanent injury settlement. That's all it covers. It doesn't pay the employee for his accrued benefits that he earned prior to the injury. The second issue was, it really deals with the city has a union representative, or they say, that the union made a deal with the city to do this, to take his accrued benefits and use it to reimburse themselves because somehow their insurance company did not pay them, so they're short for about a year's payments. Incidentally, in this case, the city paid my client his wages directly, and the money they received from the insurance carrier, the workman's comp benefit, was paid to the city. But what happened apparently, or so they tell us, is that the workman's comp carrier stopped paying them, and they continued to pay my client for about a year. So they're saying they want to make themselves whole by taking his benefits and applying them, and they tell us there's some type of a deal they made with the union where they could do this if they put him on medical leave without compensation. Mr. Rich, I don't want to stop you from making the arguments in your underlying case, but the court has raised the issue of whether or not we have jurisdiction to hear this case. Judge, I will get to that next. The subject matter jurisdiction, the court wanted us to look at Cessna v. City of Danville, which we did, and the differences between that case and this case is in Cessna, it was a contract case. It included three counts, and one of the counts was in the contract, did the city have just cause for firing this bus driver? And that required interpretation, and there is no issue in this case requiring interpretation of the collective bargaining agreement, and that is a major difference here. But a second issue here that you didn't have in Cessna is this, as opposed to suing on a contract, we're suing for a violation of the Wage Payment and Collection Act, and that's a separate count. It's independent of the collective bargaining agreement. Doesn't factually this dispute arise because of some of the language in the collective bargaining agreement? Oh, it does. Your Honor, it does. I'm just saying we don't have to interpret it though. But it does, for example, he gets his vacation pay, and he gets his hours for sick pay, if you would, which is a considerable amount of money. He gets that under the collective bargaining agreement when he's terminated. And so when Mr. Kibbens got terminated, he said, all right, pay me my benefits, and they said, oh no, we made a deal with the union that we could use that money, and that's what the issue is. But I'm saying there is no interpretation here. But aside from the fact of an interpretation, it's arising factually from the collective bargaining agreement, which is heard by somebody else. Your Honor, it does. That's part of the collective bargaining agreement. It arises, if those terms are satisfactory. Yes, it arises under that agreement. They are contractually bound under that agreement. But again, it's also under the Wage Act. So you have two separate, in Cessna, you needed to interpret the contract for just cause. We don't have to do that here. We have a termination. You owe us the benefits now. There's no argument as to the hours. There's no argument as to the dollar amount. And basically, because there is no requirement or need to interpret the contract, it's properly before this court. In a way, would you say you're trying to enforce the collective bargaining rights? Well, I would accept, Your Honor. If you look at what we pointed out, the collective bargaining agreement actually exempts employee discharge matters. I mean, that's what it calls for, I think, in the last paragraph of the grievance procedure. It says the collective bargaining agreement does not deal with matters of discharge. It puts them aside from the grievance procedure, so you can't grieve discharge, if you would. Now, if you can't do that... And then who typically makes those primary decisions? That is left... Whether or not it's a proper grievance or not. Well, the city retains the right to discharge an employee, and if they do that, that is not... In the collective bargaining agreement, under the grievance provision, I think it's the last paragraph. Was there, by the way, as an aside, there is a mention in one of the supplemental briefs that the union failed to proceed with the grievance procedure. Was there some kind of acknowledgement, I mean, an affirmative statement or something like that about that? Your Honor, we made an affirmative statement in our complaint, and basically we attached to the complaint quite a few documents dealing with my client going to the attorney for the union, and really I think the president or officials in the union saying, hey, what are we doing about this? And they refused to give him a form to file his grievance. They tell him he doesn't have a grievance. So we attached considerable documents to the complaint saying he has exhausted his administrative rights. I understand what you're saying there, but there was never a formal... Was there ever a formal attempt to do something, and so he's pushed back and saying that you can't do it on your own or you can't do something? I mean, was there any formal kind of action taken? That the union responded back to him? The action taken saying, no, we're not allowing you to proceed with the grievance? It's not my understanding, no. He's simply told you don't have a grievance, you can't file it. We're not going to accept it. And I think that is all part of the complaint. The underlying complaint. Right. So there was sort of an informal chitchat and complaint brought over to the union president and the union lawyer. Union president and the union attorney, yes. And allegedly, in their opinion, this wasn't going to go anywhere. Right, exactly. And then any further actions were, this record doesn't show any further actions, right? That would be correct, sir. Mr. Ridge, I think if I understand correctly that the city's position is that they negotiated with Mr. Kiven's union representative and came to this agreement that allowed them to do what your case is saying that they can't do. That is the city's position, yes. The problem with that, Your Honor, is the city, the union representative cannot do that, cannot negotiate with the city. It's the difference between a separate bargain and collective bargaining. And how do we know that? We know that because of the collective bargaining agreement, right? We do, and we also know that because it's in the briefs, but we have testimony in court that this is the first time they tell, you know, they bring this union official, he's mentioned in the trial transcript, and it's also mentioned that, you know, this is the first time we've ever done this, the first time anybody's ever done this, to make a separate bargain for Mr. Kiven's. And we're saying, how do you do that, union official? You gave up $25,000 of his benefits for nothing almost, to get $10 a month in benefits. It's not something he agreed to, it's not something he would ever ratify, and the union, as I say, had no right to do that, if that happened. I mean, we said it's hearsay, and the judge overruled us, so we don't really know if that happened. We don't know how it was presented. Okay, and what we're required to focus on here is whether or not the case that you've brought is a case that, under the existing state and federal law, needed to be brought before the labor board rather than a court. Judge, I guess some of the reasons it is here is that if you brought it before the Illinois labor board, they would say, well, gee, this was a union... The union made this deal with the city. I don't know if they're competent enough, I don't know if they want to deal with the concept of collective bargaining versus separate bargaining. That's what they're constituted to do, is deal with what the collective bargaining agreements mean, and what they allow. Judge, I think if I look at the law in the area, my client certainly, because of all the documents attached to the complaint, he certainly attempted to exhaust his administrative remedies. He was given misinformation, or it was denied all along the way. This was argued at the trial court level in motions to dismiss, and it was finally weighed in my client's favor, and then this court brought it up again. And I think it's a good argument, if you would, but I mean, if there is no interpretation required, then it is proper that this court would handle it. And we're not arguing unfair representation like in Cessna, where it has to be mandated that you go to the Illinois labor board. That's not the case here. We came in and we argued the wage act. That's what we're arguing. Okay, but you're also arguing that his representative had no authority to negotiate his rights away with the city. That is true, Your Honor. And that requires interpretation of the collective bargaining agreements. Well, that's not in the collective bargaining agreement. Okay, but the collective bargaining agreement is what a representative relies on in representing somebody who belongs to the union. And you're saying he didn't have the right to go in and bargain away his rights. Is that correct? We are saying that, yes we are. For many reasons, yes. Okay, and so we need to look at the collective bargaining agreement to determine whether or not there was a valid agreement between him and the city. I understand, Your Honor. Again, I would ask the court to look at that last paragraph under the grievance procedure where the exempt matters that are retained by the city, and one of those would be promotions or terminations. And the matters that deal with it. And we're saying, hey, if they've exempted it from grievances, if we go to the Illinois Labor Relations Board, they're going to say, hey, this was exempt, so why are you here? Thank you, judges. Thank you, Mr. Ridge. Are there any other questions? Mr. Boland? Good morning. Good morning. Your Honors, Mr. Ridge, may it please the court. The frustration in this case is there are at least three reasons why this case should not be here and should never be. The first reason is the issue that the court has raised, the issue of the subject matter jurisdiction versus the Illinois Labor Relations Board. The court in SESTA specifically said that if a dispute arises based upon a collective bargaining agreement, that that dispute should be under the exclusive jurisdiction of the Illinois Labor Relations Board. This case, no matter how counsel and plaintiff try to avoid it, has been pled in three separate complaints with the attachments as being based upon rights which arise from the collective bargaining agreement. There is no guarantee or no provision in the Illinois Wage and Collection Act that deals with accrued sick time. There is nobody in the state of Illinois under that act that has the right to be paid accrued sick time unless there is a separate agreement which gives rise to that benefit. The only basis upon which Mr. Gibbons can say I have a right to accrued sick time and accrued holiday time, because he was paid for both of those, is because there exists a collective bargaining agreement which gives him that right. So when he says it's based upon the Illinois Wage Act, it's not. And nor does his complaint say it is. And in fact, nor does his own brief in this case say it is. They say this is based upon the collective bargaining agreement. And you're now asked to interpret the collective bargaining agreement not only on the issue of what benefits have accrued, but on the question of whether there was authority to represent as the union representative did in making the deal that made the city somewhat whole. And gave Mr. Gibbons the ability to make himself whole, and we'll deal with that in just a minute, because Mr. Gibbons was fully informed that this was what was happening. And if you look at the documents attached to the complaint, he sent emails back and forth to the union saying, why did you do this? What's going on here? And he acknowledged in his own testimony that he knew that the union and the city had come to this agreement that put him on unpaid medical leave as opposed to terminating him from his employment. Now, what did he benefit from that? He had two benefits by that side of the deal. He was able to stay on the city's medical insurance, and he was able to receive IMRF disability, short-term disability payments. Neither of which he really needed. In our opinion, he didn't. But in terms of the medical insurance issue, that was a benefit. But the issue from the city's standpoint is, yes, absolutely, we didn't know that the city was not going to be reimbursed for his TTD until October of the year that we had been paying him since January. That's when the public risk fund informed the city, we terminated him from TTD as of January of 2003, for whatever reason. When the city found this out and found out through follow-ups that it wasn't going to get changed, that's when the city took the action to say, okay, we've got to cut, pursuant to our policy, we have no obligation to pay you and had no obligation to pay you since January 20th of 2003. However, rather than have you repay us that money, and then we'll pay you out your benefits, the city took the position that we'll apply this to your accrued benefits. And if you have an issue with workers' comp, all of your cases at that point, all of his cases at that point, were still pending. Four cases pending. And ultimately, he agreed and settled those cases two or three years after the fact, while this case was pending. And said, I hereby release the city of Kankakee from any further liability for TTD, permanent partial disability, medical payments, or any other benefits. And those releases are included in the record. So the city's position is, you've made your deal with workers' comp, you've been paid in full, at least you've been satisfied and paid in full, and you release the city from any other responsibility for TTD. And in the meantime, we also paid you, in fact, we overpaid you for your accrued time, vacation, sick time, and we applied holiday pay as well. And the city actually paid Mr. Kibbens $39,399. But that was your fault, right? Absolutely. Absolutely. We should have realized, or it was public risk, probably, but there should have been better communication. But we kept paying him. But when we finally realized there was not going to be reimbursement, that's when we stopped. But the city shouldn't have to pay that twice, which is what Mr. Kibbens is asking. He's asking to be paid not only the $39,000 he's already received from us, which was 100% of his pay from January 20th through December 15th, and the $230,000 almost that he received from the city's workers' comp carrier, but now he's coming back and saying, well, I also want the $29,000 I should get for accrued benefits. Well, wait a minute. He already received that when he was paid $39,000. And yes, the city's – we can't absolve ourselves of that. Had the city been more vigilant in checking with the public risk fund regarding the reimbursement, they'd get one check reimbursing the city for all of the people who were off on workers' comp. I'd like to interrupt for a second. Sure. And I apologize for interrupting. No, not at all. But you mentioned initially that there were three reasons that you felt that we didn't have jurisdiction. There are three reasons that the case should not be. One is the jurisdictional issue that's raised in session. Okay, so there weren't three jurisdiction reasons. The second issue was the jurisdictional – we did raise in the motions to dismiss we filed and said this is a dispute between you and your union. We have a collective bargaining agreement. We should be dealing with the union here. The trial court dismissed the case twice on that basis. And then finally, with the change of pleading, decided there was sufficient basis not to dismiss it on the third occasion. So those are the two jurisdictional issues that we have raised, one that the court has raised and one that we raised in the lower court saying this is an issue between the union and the city. Should have been. And the grievance procedure should have been followed if there was a grievance issue. And it is important to note that under this collective bargaining agreement, an employee can file the grievance on his own. He's not limited to the union filing the grievance. It specifically says the employee or the union can pursue a grievance. Mr. Kennedy. To the labor court. Well, originally the grievance would be filed with the city and then it would go through the arbitration process, presumably, or ultimately the labor relations board if there was an issue of unfair… Your opponent argues that there was implicitly an exhaustion of those remedies because of this earlier discussion. And as you know, I asked him, aside from this informal thing, there was never a formal rejection of anything. No. There were conversations, representations made, and that was it. The city was not involved in any of that, and all we know is what we obtained in discovery, which was the communication between the union and Mr. Kibbins, and the communication we had regarding how does the city extricate itself from the issue that we're now facing, and went to the union and the union said, we will agree that you should apply this towards the contractual benefits, number one, and number two, just reinstating back to employment on medical leave. In essence, Your Honor, it's our position that the trial court making the finding that if it granted the relief sought by Mr. Kibbins, it would be allowing him to reap a windfall and a double recovery, is exactly the right decision. Mr. Kibbins has been paid by the city, in fact, overpaid. The court denied our counterclaim for reasons related to the damages calculation. But Mr. Kibbins has been paid in full for the benefits under the contract. He's been paid in full by his agreement and release of the city under the Workers' Comp Act. There's nothing else owed Mr. Kibbins, and all in the latest court probably doesn't have jurisdiction of this issue anymore. In that case, we ask you to either affirm or determine that you have no jurisdiction and dismiss the appeal. Are there any other questions? Thank you, Mr. Boland. Thank you, Your Honor. Mr. Ridge? Your Honor, the city tells you that he's been paid. In the year he was injured, he was paid $39,000. The amount isn't the issue, it's just the fact that they say he was paid directly by the city and they collected his workers' comp from the insurance carrier. They point that out as number one, and they say the second issue is, well, you know, he did receive his compensation for his permanent injury, I believe he got $230,000. And then they say, why should we pay him a double benefit? How are they ever telling us there's a double benefit? They have a man injured on the job, he's worked for the city 15 years, he's permanently injured. That was a determination by the Worker's Comp Board. He also, prior to the injury, had accrued this $25,000 in benefits. There is no double payment. I can't believe they're even making that argument. But isn't the argument that his TTD was cut off in January, but because of the lump payments that come from the city's insurance carrier, the Worker's Comp insurer, the lump payment is made and then, you know, that's to reimburse for all the workers, that the TDD was cut off, but they didn't realize this. They continued to pay Mr. Kibitz a benefit that the Worker's Comp carrier said he wasn't entitled to. Right. It was cut off because the city was negligent. The minute my client found out that they'd stopped paying, or supposedly they'd stopped paying, he went and got it reinstated. For years thereafter, he was paid directly by the fund himself. I mean, it was because the city's negligent. It's the city's mistake, and they even admit it's their mistake. They didn't follow through on it, they didn't know it had hurt for a year. So if they had told, if this had happened, when it happened, if they had told them instead of ignoring it, or not keeping track of their records for a year, it would have never happened. So when it was reinstated... It was reinstated immediately. When he found out about it, he went down and he went with his attorney to the board, and it was reinstated immediately. And what about the retroactive portion of that? They didn't pay retroactively. It was, assumptively... We don't know, Judge, maybe the city got it. We don't know. They're saying they didn't get it. But what I'm saying is, if it was cut off, the only reason it was cut off was the city's mistake, not my client's. Why penalize my client? Why take his accrued benefits to make them whole? That's what they're doing. There is no double benefit, if you would. And just quickly, Your Honors, my client, in his complaint, made the statement that he exhausted his administrative remedies. You have in front of you that statement, plus the documents that he had sent to the union president, to the union attorney. You even have his own affidavit in there as to all the attempts he made. So, yes, he attempted to exhaust his administrative remedies. He never got any other advice other than, this is not subject to a grievance. And he wasn't given the form. So that's, in any case, Your Honors, where even if you think you didn't have jurisdiction for this type of issue, after somebody exhausts their administrative remedies, or at least they attempt to exhaust it, as mentioned in that one federal case, Lingle v. Norridge Division, they say that an application of state law is preempted only if such application requires an interpretation of a collective bargaining agreement. There's no argument, he's owed this amount of money, this amount of hours. He's in the proper court, he should be paid. Thank you, judges. Thank you, Mr. Ridge. Thank you. We thank both of you for your arguments this morning. The matter will be taken under advisement, and a written decision will issue as quickly as possible. The court will now stand in brief recess for a panel change. The court is now in recess.